## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MICHAEL PEREZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10-CV-2107-JAR/GLR** |
| | ) | |
| **UNIFIED GOVERNMENT OF** | ) | |
| **WYANDOTTE COUNTY/KANSAS** | ) | |
| **CITY, KANSAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Michael Perez alleges that defendant Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"), discriminated against him based on his gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 24 U.S.C. § 2000e *et seq.* This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. 41). For the reasons explained in detail below, the Court grants defendant's motion.

## I.     **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] A fact is "material" if, under the applicable

---

[1]Fed. R. Civ. P. 56(a).

[2]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated

---

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7]*Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[8]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671).

therein."[10]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.    Statement of Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to plaintiff.  Plaintiff has worked at Unified Government's Board of Public Utilities ("BPU") since January 1978.  For the last twenty-five years, plaintiff worked in the division of Electrical Production and Supply as a Maintenance Planner.  For the last fifteen years, plaintiff has been responsible for scheduling and assigning work and coordinating work schedules.  He also has one employee who directly reports to him.  Previously, plaintiff was a union steward and a member of the union negotiating team.

---

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(c)(4).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

Approximately eight years ago, plaintiff regularly worked with the Stores Department ("Stores"), which consists of four storerooms. Plaintiff worked with Stores to identify obsolete parts, created a system to account for tools and equipment, assisted in inventory, and worked with Stores to procure parts and equipment. Plaintiff worked in conjunction with Stores for around fifteen years; however, eight years ago his duties changed, and he has not performed significant work with Stores since.

On August 8, 2008, plaintiff responded to a job announcement seeking applications for the Supervisor of Stores position. The announcement required at least three years of related work, supervisory experience, and "good working knowledge and experience in storeroom operations" as well as the ability to plan and control the Stores operation. The Supervisor of Stores directly supervises seventeen other positions and regularly interacts with other departments.

Plaintiff and thirteen other applicants submitted a bid for the job. On August 27, 2008, plaintiff received a letter stating that hiring for the position was on hold. In October of 2008, plaintiff received an e-mail from Nanette Wolf, the manager over Stores, congratulating Julia Ford for assuming the Supervisor of Stores position. Plaintiff received a letter five days later rejecting his application for Supervisor of Stores.

Four applicants, all female, were selected by Wolf to interview for Supervisor of Stores. Each of the four people interviewed had worked at least fifteen years in the storerooms. Ford, who was a truck driver in Stores at the time of the promotion, had worked in the storerooms for eighteen years and had worked every position the department. However, Ford only stepped-up to lead roles in the department, and had never formally held a supervisor or managerial role.

Wolf testified she did not select plaintiff for an interview because he had never worked in Stores. Wolf testified that she reviewed plaintiff's resume for ten minutes before concluding that he did not have the requisite knowledge of Stores for the position. She acknowledged that plaintiff worked in conjunction with the storerooms but felt that in order for him to be qualified for the position, he needed experience in the day-to-day operations of the storerooms, that is, to have worked in Stores. Wolf admitted that because having worked in the storerooms for a substantial period of time was a qualification for the position, no man who applied was qualified for the supervisor position.

Stores leadership is predominated by female employees. All eleven of the management or leadership roles are held by women. Of the twenty-six Stores employees, only four or five are male and are all employed as manual laborers. Additionally, although Wolf expressed a preference for hiring within the department, Wolf hired Jill Rogers to serve as a Procurement Contract Coordinator from outside the Purchasing Department where the position is based. Wolf described Rogers' position as clerical in nature; she has no supervisory responsibilities.

On November 4, 2008, plaintiff filed an internal complaint alleging gender discrimination with Human Resources Director, Kevin Williams. Williams acknowledged that he received the complaint and told plaintiff that Sam DeLeon would contact plaintiff to discuss it. Plaintiff interprets BPU's standard policy as requiring the investigator to interview the person who filed the complaint. DeLeon testified that he thought Williams had talked to the plaintiff personally. Plaintiff testified that neither DeLeon nor Williams interviewed him about his complaint. DeLeon issued a written determination on November 12, 2008, concluding that BPU did not discriminate against plaintiff.

After receiving the letter from DeLeon, plaintiff ran into Williams in the bathroom at a local bar. Plaintiff testified he asked Williams why no one would talk to him. Plaintiff testified that Williams responded, "Mike, I'm just telling you to let this go. This job was created for a woman in that department. That department is having a lot of trouble. It is not somewhere where you want your career to go. I'm telling you as a friend, just let it go." When plaintiff reiterated that he wanted the job Williams told him, "Mike, just let it go." Later in his deposition, plaintiff testified that Williams also said, "You don't want to be in that department, it's all women, and there's a lot of headaches there. It's not something you want." During the same portion of the deposition, plaintiff also testified that he thought the job was "pointed for" Ford, potentially because of a relationship she was having with Steve Rehm, another BPU employee.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") alleging gender discrimination by defendant in the denial of the promotion.

## III. Discussion

Title VII makes it an unlawful practice for an employer "to deprive any individual of employment opportunities . . .because of such individual's. . . sex."[15] Title VII's prohibition on discrimination protects members of both historically disfavored groups and historically favored ones.[16] Claims such as plaintiff's, brought by a member of a majority group, have been

---

[15]42 U.S.C. § 2000e-2(a)(2).

[16]*See Livingston v. Roadway Express Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986).

characterized as claims for "reverse discrimination."[17]

"There are two general methods by which a plaintiff may proceed on a reverse discrimination claim."[18]  The first method parallels the familiar burden-shifting analysis coming out of *McDonnell Douglas Corp. v. Green*.[19]  Alternatively, a plaintiff may survive summary judgment by producing "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability that but for the plaintiff's status, the challenged employment decision would have favored the plaintiff."[20]  In this case, plaintiff asserts that his reverse discrimination claim is supported by the use of either direct or indirect evidence.

A.       Direct Evidence of Discrimination

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."[21]  Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."[22]  "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus and thus, does not constitute direct evidence."[23]  "When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, . . . the

---

[17]*See Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th Cir. 1992).

[18]*McGarry v. Bd. of Cnty. Comm'rs*, 175 F.3d 1193, 1199 (10th Cir. 1999).

[19]411 U.S. 792 (1973).

[20]*McGarry*, 175 F.3d at 1199 (quoting *Notari*, 971 F.2d at 590) (quotation marks omitted).

[21]*Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007).

[22]*Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002).

[23]*Hall*, 476 F.3d at 855 (quoting *Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002)).

plaintiff must demonstrate a nexus exists between the allegedly discriminatory statements and the [adverse employment action]."[24]  "Direct evidence is that which demonstrates a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision to take the adverse employment action."[25]  "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements."[26]  Stray comments and jokes are not direct evidence of discrimination.[27]  Rather, the evidence must show that "the employer actually relied on [] gender in making its decision."[28]

Plaintiff contends that Williams' statement that the job was created for a woman in the Stores department constitutes direct evidence of discrimination.  He argues that Williams' statement is attributable to BPU even though Williams was not the ultimate decision maker.  Defendant asserts that Williams' statement should not be considered by the Court because it constitutes impermissible hearsay.  Alternatively, defendant argues that even if the statement can be admitted, it either is properly classified as circumstantial evidence or does not rise to the level of discrimination because Williams was implying the job was made for Ford and not any female.

---

[24]*Id.* at 857 (quoting *McCowan v. All Star Maint. Inc.*, 273 F.3d 917, 922 n.3 (10th Cir. 2001).

[25]*Deneen v. Nw. Airlines*, 132 F.3d 431, 436 (8th Cir. 1998).

[26]*Hall*, 476 F.3d at 855 (citing *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999)).

[27]*Berroth v. Farm Bureau Mut. Ins. Co.*, 232 F. Supp. 2d 1244, 1248 (D. Kan. 2002).

[28]*Id.*

As a threshold matter, defendant contends that Williams' statement cannot be considered by the Court because it is inadmissible hearsay. Under the Federal Rules of Evidence, when a statement is made "by the party's . . . servant concerning a matter within the scope of the . . . employment, [and is made] during the existence of the relationship" the statement is by definition not hearsay.[29] In the employment context, however, a statement is admissible against a party-opponent only if the declarant was "involved in the decision making process affecting the employment action."[30] Plaintiff does not address this issue other than to note that Williams was responsible for advising him that he did not receive the promotion and for investigating his complaint of discrimination. At the time of the statement, Williams was employed by BPU as the Director of HR. Although DeLeon testified that Williams would have been involved in the job posting process, the record indicates that Wolf, not Williams, was directly involved in the decision-making process, and that Williams' involvement was limited to his role as HR Director. Thus, Williams cannot fairly be considered a party-opponent and his statement is inadmissible.

Even assuming that Williams's statement is admissible, however, it does not rise to the level of direct evidence because of the context in which the statement was made. Defendant argues that the meaning of the statement is ambiguous and thus cannot constitute direct evidence. Plaintiff alleges that Williams stated, "this job was created for a woman, in that department. That department is having a lot of trouble. It's not somewhere you want your career to go."[31] Plaintiff made this allegation shortly after testifying about Ford's relationship

---

[29]Fed R. Evid. 801(d)(2)(D).

[30]*Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209 (10th Cir. 2010).

[31]Doc. 44, Ex. C at 97.

with Steve Rehm, when he stated:

> Not only am I fighting this discrimination of not even being given an opportunity because I was a man and not in that department, and that my qualifications—and even in this round of talking is trying to disenchant my qualifications. Why? Because I'm a man and I wanted to better my family and do this? Why? Why? Because Steve Rehm and Julia Ford have a relationship.[32]

Plaintiff then testified that Ford and Rehm had lived together for many years, that she had received previous promotions in Stores despite grievances filed against her, and that "based on that, I would tend to think that my friend Kevin Williams told me the truth," and that "[t]he job was pointed for her, yes."[33]

Taken in the context of the deposition, defendant correctly contends that the statement made by Williams' could be interpreted as asserting that the job was made for a particular woman, Ford, because of an ongoing relationship between Ford and another employee. Plaintiff testified about Williams' statement shortly after he testified that he was fighting the action both because of gender discrimination and because BPU employees inappropriately hired people because of intimate and familial relationships. Thus, the statement may provide direct evidence of bias, but does not provide direct evidence of discrimination. Favoritism alone is not actionable under Title VII; therefore, the statement could have a benign meaning.[34] Because Williams' statement is ambiguous and could be interpreted both as discriminatory and benign,

---

[32]Doc. 48, Ex. 19 at 93.

[33]Doc. 44, Ex. C. at 97-100.

[34]*See Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1370 (10th Cir. 1997).

the statement does not rise to the level of direct evidence.[35]

In addition, the statement lacks the necessary nexus to plaintiff's candidacy for the Stores position because they were not made at the time he was applying for the job. Consequently, it was not "comments made by a manager responsible for the employment decision at issue during the decision-making process."[36] Plaintiff relies on *Berroth v. Farm Bureau Mutual Insurance*[37] for his assertion that Williams' remark that the job was "for a woman" constitutes direct evidence of reverse discrimination. In *Berroth*, after members of an interview committee made positive remarks about a female applicant, another member of the committee responded by stating that he did not want another female in the position. *Berroth* may be distinguished from this case, however, because the court only found the statement to be direct evidence because it was made immediately after the interview and to the hiring committee members.[38] In contrast, Williams' statement was an offhand comment made in a bathroom at a bar by a non-decisionmaker after the hiring decision had been made, and after plaintiff's complaint had been denied.[39] A reasonable jury could not find, based on this statement, without making some inference, that plaintiff was not selected for the Stores position because of his gender. For these

---

[35]*See Hall v. U.S. Dept. of Labor, Admin. Review Bd.*, 476 F.3d 847, 855 (10th Cir. 2007).

[36]*Id*. at 857 (citing *Danville*, 292 F.3d at 1249).

[37]232 F. Supp. 2d 1244 (D. Kan. 2002).

[38]*Id*. at 1249.

[39]*See, e.g., Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999) (finding statements that the plaintiff was on the defensive because she was black and an "incompetent nigger" were stray remarks because they were personal opinions and not related to the employment action); *Heim v. Utah*, 8 F.3d 1541, 1546-47 (10th Cir. 1993) (holding supervisor's statement in an angry outburst over the plaintiff's performance of her duties, "f-iing women, I hate f-ing women in the office" was not direct evidence because it "did not show that the supervisor acted with discriminatory intent, only that he unprofessionally offered his private negative view of women during a display of bad temper at work").

reasons, the alleged statement by Williams does not establish direct evidence of discrimination.

### B.    Indirect Evidence of Discrimination

In the absence of direct evidence of discrimination, the court applies the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*.[40]  Under this framework, plaintiff must first prove a prima facie case of discrimination.[41]  Ordinarily, to succeed on a Title VII claim, plaintiff must show that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.[42]

Because plaintiff alleges reverse discrimination, the Court analyzes his claim under the framework for reverse discrimination set forth in *Notari v. Denver Water Department*.[43]  The elements of a prima facie case are adjusted in reverse discrimination because "the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group."[44]  Thus, instead of proving he is a member of a protected class, the plaintiff must establish "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[45]

---

[40]411 U.S. 792 (1973); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

[41]*McDonnell Douglas Corp.*, 411 U.S. at 802.

[42]*Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

[43]971 F.2d 585 (10th Cir. 1992).

[44]*Id.* at 589.

[45]*Id.*; *see Mattioda v. White*, 323 F.3d 1288, 1293 (10th Cir. 2003) ("*Notari* continues to operate as Tenth Circuit precedent and, under *Notari*, Mattioda must demonstrate background circumstances").

If plaintiff proves a prima facie case, the burden of production shifts to defendant to "articulate a legitimate, nondiscriminatory reason for rejection."[46] If defendant sustains that burden, the burden of production shifts back to plaintiff to show that defendant's proffered reason for rejection is false, or merely a pretext, and the presumption of discrimination created by establishing a prima facie case "drops out of the picture."[47] Although the burden of production shifts back and forth between the parties, the ultimate burden of persuasion remains at all times with the plaintiff.[48]

### 1.    *Prima Facie Case*

Defendant contends that the plaintiff did not supply sufficient background circumstances to support an inference that it is an unusual employer that discriminates against men. Defendant also contests that plaintiff was qualified for the position. It is undisputed that plaintiff suffered an adverse employment decision and that the job was ultimately filled by a female.

### a.    **Background Circumstances**

Defendant asserts the plaintiff has failed to allege background circumstances that support an inference that BPU discriminates against men. In order to allege sufficient background circumstances, the plaintiff does not have to set forth facts that prove intentional discrimination, rather the evidence must raise "a suspicion" that the employer discriminates against the

---

[46]*See McDonnell Douglas Corp.*, 411 U.S. at 802.

[47]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

[48]*Burdine*, 450 U.S. at 253.

majority.[49]

The workforce composition in BPU's Stores Department raises such a suspicion. Of the twenty-six employees in Stores, only four or five are men. Additionally, only women are in managerial or leadership roles in Stores and the few men who are employed with the department are manual laborers. In *Reynolds v. School District No. 1, Denver, Colorado*,[50] the Tenth Circuit found the plaintiff alleged sufficient background circumstances where a bilingual department only employed one white individual.[51] Much like in *Reynolds*, Stores employed a high number of minority individuals. Had BPU awarded plaintiff the position, he would have been the only male employee in a leadership role in the Stores department. This statistical evidence, coupled with remarks from BPU employees that only woman could have qualified for the job, which was earmarked for a woman, sufficiently raise background circumstances that support an inference that BPU discriminates against the majority.

### b. Plaintiff's Qualifications for the Position

Defendant contends that plaintiff was not qualified for the Supervisor of Stores position because he lacked a "good working knowledge" of the day-to-day operations of the department. Plaintiff asserts that his previous experience working with Stores adequately prepared him for the position and that Wolf "gerrymandered" the qualifications so that no man could have been hired for the supervisor position.

In support of his position that Wolf inappropriately added qualifications to the job

---

[49]*Notari*, 971 F.2d at 589.

[50]69 F.3d 1523, 1535 (10th Cir. 1995).

[51]*See id.* at 1535.

14

requirements after the posting, plaintiff cites *Klindt v. Honeywell International, Inc.*[52]  In *Klindt*, this Court reviewed a job posting that required a high school diploma and stated a preference for a "technical school certificate."  The Court determined that the plaintiff in *Klindt* was qualified because the plaintiff had a high school diploma and it was unclear if the technical course work she had done qualified as a "technical school certificate."[53]  Defendant contends that the position announcement in this case did not "present any similar discrepancy" and thus, *Klindt* is not analogous.

Defendant, however, places too great an emphasis on the precise language of the job description in *Klindt*.  Although the plaintiff is burdened with proving a prima facie case, the summary judgment standard still requires the Court to resolve reasonable inferences in light of the plaintiff.  In *Klindt*, the summary judgment standard required the Court to resolve the preference for a "technical school certificate" in favor of the plaintiff.[54]  Similarly, the phrase "good working knowledge" does not immediately call to mind an easily applied objective criteria.  Thus, if plaintiff's experience could reasonably be inferred to fill the position requirements, the Court must find that plaintiff was qualified.  It is undisputed that plaintiff previously worked in conjunction with Stores for a number of years on a variety of projects. This work with Stores likely exposed the plaintiff to the day-to-day operations of the department. Additionally, plaintiff had ample experience in a supervisory role and held leadership positions with the union.  The reasonable inference from this experience is that the plaintiff had a good

---

[52]303 F. Supp. 2d 1206 (D. Kan. 2004).

[53]*Id*. at 1214-15.

[54]*Id.*

15

working knowledge of the department and was otherwise qualified for the position.

Because the plaintiff presented background information to infer that defendant discriminated against men and because the plaintiff was qualified for the position, the plaintiff has alleged a prima facie case of reverse discrimination.

### 2.      *Legitimate Non-discriminatory Reason*

Under the *McDonnell Douglas* framework, once the plaintiff has alleged a prima facie case, the burden shifts to the defendant to present a legitimate non-discriminatory reason for refusing the plaintiff an interview and the position.  The defendant's burden does not require that it actually relied on the proffered rationales for the employment decision, but only that defendant give a specific and clear reason for its actions.[55]  Additionally, the *McDonnell Douglas* framework does not charge the defendant with proving that the rationale has merit.[56]

Defendant asserts that it decided not to interview plaintiff because he had never worked in Stores.  BPU created the supervisor position because of a number of problems in the Stores Department, and the position was also charged with supervising seventeen other positions. Therefore, defendant determined that in order to be successful, the person selected for the position must have worked in Stores.  Wolf concluded that the plaintiff's interactions with the department eight years ago did not constitute having worked in Stores and thus was insufficient to merit an interview.  Additionally, defendant asserts it promotes from within departments and expects employees to work their way up in each department.  Again, because plaintiff had not

---

[55]*EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

[56]*Id.*

worked in Stores, he had not worked his way up the chain of command. Plaintiff does not assert that the proffered rationales in any way constitute discrimination; rather, he argues that defendant's reasons are pretextual. Because defendant's rationales are undisputably non-discriminatory, defendant has met its burden of offering legitimate reasons for denying the plaintiff the position.

### 3. Pretext

In the final step of the *McDonnell Douglas* framework, the burden shifts back to plaintiff to show that defendant's stated reasons are merely a pretext to hide gender discrimination.[57] Plaintiff contends that defendant's alleged non-discriminatory reasons are pretext and that discriminatory motives are more likely. Plaintiff makes seven independent pretext arguments.

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[58] While this burden is not onerous . . . it is also not empty or perfunctory."[59] A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to

---

[57]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

[58]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

[59]*Id*. at 1323-24.

company practice when making the adverse employment decision affecting plaintiff.[60] "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment."[61]

### a. The Need for Plaintiff to Have Worked in Stores

Four of plaintiff's pretext arguments (perpetrating female domination of leadership roles, manipulating criteria, relying on subjective criteria, and contradictory reasons for not considering the plaintiff) focus on Wolf's determination that a candidate needed to have worked in Stores in order to have a good working knowledge of the department. Plaintiff contends that his experience working with Stores gave him a good working knowledge and defendant's requirement to have worked in the department was solely in place to limit the field to women. Defendant asserts plaintiff only had limited contact with Stores and had not had regular contact with Stores for eight years; thus, he was not qualified to be interviewed.

Plaintiff has not put forth any evidence that Wolf's requirement that candidates have worked in Stores was enacted because of discriminatory intent. Wolf testified that the Supervisor of Stores would have a number of direct reports and would need to know about a variety of positions. Wolf followed this criteria and interviewed only people with at least fifteen years of experience in Stores. Wolf reiterated throughout her deposition that the crucial criteria was a significant amount of time working in the Stores department. This criteria is not subjective, manipulated, nor does it contradict the job posting. Plaintiff's work with Stores was

---

[60] *Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[61] *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1217 (D. Kan. 2000) (citing *Hilti, Inc.*, 108 F.3d at 1323).

tangential and he had not worked with Stores for eight years. In order to defeat summary judgment, plaintiff must point to some evidence beyond conjecture that defendant was engaging in discriminatory practices. Plaintiff cannot point to evidence beyond his own speculations that the criteria was inappropriate as a hiring rationale.

Further, Wolf's requirement that candidates must have worked Stores was in accordance with the common practices of BPU. Defendant presented evidence that positions in management were frequently given to individuals who had worked their way up the chain of command. If BPU had hired plaintiff over employees long-employed in Stores, he would have been the exception to the informal policy.

Plaintiff also relies on being told that the position was on hold, and then filled without candidates being notified of the process continuing, as evidence of manipulation. His argument, however, is unpersuasive. Wolf informed all candidates that the job was on hold and only contacted the interviewees after she was allowed to continue the process. Likewise, Williams' "confession" that the position was earmarked for a female employee in the Stores Department does not change the fact that plaintiff had never worked in the Stores Department in his thirty-two years of employment at BPU. Moreover, if Ford's promotion was predetermined because of her relationship with another employee, it only shows that the application process was a meaningless exercise. As the Tenth Circuit explained, allegations of pre-selection "might be inconsiderate or unfair, but it does not support the inference that the . . . employment decision was motivated by [unlawful] discrimination."[62]

---

[62]*See Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005); *Mackey v. Salala*, 360 F.3d 463, 468-69 (4th Cir. 2004) (holding that the plaintiff's allegation of preselection, even if true, did not entitle a jury to conclude that its proffered explanation—that the candidate was better qualified—was a pretext for unlawful

In short, there is no evidence that the stated non-discriminatory reason was false or contrary to formal or informal policy. Plaintiff offers no evidence beyond a conclusory statement that the disparate number of women was a "Girl's Club." Plaintiff's speculations on Wolf's motivation cannot alone defeat summary judgment.

**b.      Failure to Follow Investigation Procedures**

Plaintiff asserts that pretext is evidenced by BPU's failure to follow its own internal investigation procedures. Defendant contends that plaintiff's complaint was investigated and that he is simply unhappy with the outcome. Contrary to defendant's statement in its brief, plaintiff did not admit in the referenced deposition that the complaint was investigated. Rather, plaintiff stated he did not believe the complaint was "fully investigated" because the investigator never interviewed him.

BPU's internal complaint procedure requires that after a written complaint is filed, the complainant is given an "orientation" on the investigation procedure. BPU's Personnel Code states that the procedure includes: "Investigation of the complaint, including discussing the situation, reviewing documents, interviewing employees who have knowledge about the alleged discriminatory practice; and a review of the investigation results by the Human Resources Director and efforts to conciliate the complaint." DeLeon, who was charged with the investigation of the complaint, testified that he interviewed Wolf, who told him that she was looking for someone with historical knowledge of the problems in Stores and knowledge of the day-to-day operations of the department. DeLeon also interviewed Darrell Dorsey, who

discrimination).

manages plaintiff's current department, about plaintiff and his duties as a Maintenance Planner. Notably absent from the interview list is any attempt to interview plaintiff. DeLeon testified that he thought Williams had spoken on the phone with plaintiff about the complaint. Plaintiff testified that no one contacted him about the complaint until he received DeLeon's memorandum which stated that no evidence of discrimination had been found.

BPU's internal investigation procedure does not expressly require that the complainant be interviewed during the investigation process. The procedure does, however, require that plaintiff was briefed on the process, which includes "discussing the situation." It is unclear if the procedure requires the investigator to discuss the situation with the complainant after the investigation is filed. If the procedure does require such a conversation, then BPU failed to follow its internal procedure by not interviewing plaintiff.

As defendant points out, however, failure to follow internal procedures is not necessarily proof of pretext. Both of the cases plaintiff cites involved instances where the neglected procedure led to the adverse employment action,[63] whereas in this case, the neglected procedure followed the adverse employment action. While "disturbing procedural irregularities" may constitute a strong showing of pretext, "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer['s]. . . substantive reasons

_____

[63]*Garrett v. Hewlett-Packard Co.*, 305 F.3 1210, 1220 (10th Cir. 2002) (concluding that an employer's failure to inform an employee it placed him in an "action needed" category and failed to give him a chance to respond before firing him constituted a disturbing procedural irregularity); *Tolle v. Am. Drug Stores, Inc.*, No. 05-2191, 2006 WL 3256835, at *15 (D. Kan. Oct. 11, 2006) (finding that failing to follow procedure identifying specific conduct which violated company policy in conjunction with a stated policy of trying to hire more women because of a business decision constituted pretext).

given by the employer . . . were pretextual."[64]  DeLeon interviewed Wolf about her hiring

rationale and interviewed plaintiff's superior to ascertain whether plaintiff's experience as a

Maintenance Planner adequately prepared him for the Supervisor of Stores position.  Thus, even

if  the procedure requires an investigator to speak to the complainant, DeLeon adequately

investigated the complaint.  His failure to follow the internal procedure does not constitute such

a disturbing violation of the procedure as to be evidence of pretext.[65]

### c. Wolf Hired Outside the Department When She Could Hire a Female

Plaintiff alleges that contrary to Wolfe's stated preference for internal hiring, she did hire

outside of the Stores department when she could hire a female.  As evidence, plaintiff asserts that

Wolf hired Jill Rogers from outside of Stores.  Defendant contends that plaintiff's allegation is

factually inaccurate because Rogers was hired for the Purchasing Department, another

department under Wolf's purview.  More importantly, however, Rogers' position and the one

plaintiff applied for differ greatly.  The Supervisor of Stores was responsible for a number of

direct reports and supervising the day-to-day operations of four storeroom.  While the Stores

position was relatively high level and managerial, Rogers' position as a Procurement Contract

Coordinator was clerical in nature.  Therefore, Rogers did not need to have working knowledge

of an entire department, unlike the Supervisor of Stores where BPU could reasonably have

determined that day-to-day knowledge was necessary.  The Supervisor of Stores position and

---

[64]*Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122 (10th Cir. 2007); *see also Housley v. Boeing Co.*, 177 F. Supp. 2d 1209, 1218 (D. Kan. 2001) (finding that failing to allow the hiring manager to make the ultimate hiring decision was evidence of process but not motive and thus did not constitute pretext).

[65]*Avila v. Jostens, Inc.*, 316 Fed. App'x 826, 834-35 (10th Cir. 2009) (finding that disciplining a single individual when procedure required an entire line be punished and suspending an employee when the usual action was "coaching" were among several disturbing procedural irregularities); *Garrett*, 305 F.3d at 1220 (finding not informing an employee he was categorized as "action needed" was a disturbing procedural irregularity).

Procurement Contract Coordinator position are sufficiently distinguishable that no reasonable juror could conclude this example offers proof that Wolf inconsistently hired outside of Stores when she could secure a female in the position.[66]

### d.     Plaintiff was More Qualified than Ford

Plaintiff contends that his qualifications greatly outweighed Ford's, and thus her hiring is evidence of pretext. The role of the Court is not to second guess employment decisions.[67] Thus, unless one candidate is "overwhelmingly more qualified" than another by a simple comparison of qualifications, it is not evidence of pretext.[68] Both candidates' longevity at BPU is impressive. Ford has worked for BPU for twenty-nine years and plaintiff has worked at BPU for thirty-two years. Plaintiff had more formal management experience that Ford and he had direct reports. Ford had "stepped up" to management roles, but never formally held one. Defendant contends that the key qualification in this context is actually having worked in the Stores Department. Ford had been employed by Stores for fifteen years in a variety of positions. On the other hand, plaintiff had only worked in conjunction with Stores and had not done so for eight years. It cannot be said that plaintiff was overwhelmingly more qualified than Ford. While plaintiff may have had more management experience, Ford was more knowledgeable of the day-to-day operations. These qualifications are not disparate enough that this Court will second guess the determination made by BPU. Plaintiff's comparison of his and Ford's qualifications is

---

[66]*Cf. Tolle v. Am. Drug Stores, Inc.*, No. 05-2191-KHV, 2006 WL 3256835, at *14 (D. Kan. Oct. 11, 2006) (finding where employee's manager had history of terminating only male employees an no female employees as inconsistency supporting a finding of pretext in reverse discrimination case).

[67]*Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 246-48 (10th Cir. 1993).

[68]*Id.*

inadequate to demonstrate pretext. Accordingly, summary judgment is granted on plaintiff's reverse discrimination claim.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 41) is GRANTED.

**IT IS SO ORDERED.**

Dated: <u>May 25, 2011</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
